# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| **In re:** <br><br> **Tiffany Bestani,** <br> *fka Tiffany Devash* <br><br> **Debtor.** | **Bankr. Case No. 16-12768-BFK** <br><br> **Chapter 7** |
| **JUDY A. ROBBINS,** <br> **United States Trustee for Region 4,** <br><br> **Plaintiff,** <br><br> v. <br><br> **Tiffany Bestani,** <br> *fka Tiffany Devash* <br><br> **Defendant.** | **Adversary Proc. No. _____** |

## COMPLAINT TO REVOKE DISCHARGE

Judy A. Robbins, the United States Trustee for Region 4, by counsel, hereby files this complaint under 11 U.S.C. § 727(d) seeking the revocation of the Defendant's discharge. As grounds, she alleges as follows:

### PARTIES

1. Plaintiff, Judy A. Robbins, is the United States Trustee for Region 4, with a business address in care of the Office of the United States Trustee, 115 South Union St., Suite 210, Alexandria, Virginia 22314.

Office of United States Trustee
Bradley D. Jones, Trial Attorney
115 South Union Street, Room 210
Alexandria, VA 22314
(703) 557-7228
bradley.d.jones@usdoj.gov                                                                                         Page 1 of 17

2. Defendant, Tiffany Bestani, is an individual, and may be served with a summons at her address of record: 1415 North Taft Street, Apt. 284, Arlington, VA 22201. Defendant is represented by counsel, Robert Sergio Brandt, in her bankruptcy proceeding.

## JURISDICTION

3. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(a), 28 U.S.C. § 157, and 11 U.S.C. § 727(d). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J), and (O). Venue is proper in this Court. 28 U.S.C. § 1409(a).

4. Plaintiff has standing to seek revocation of Defendant's discharge in this case. 11 U.S.C. §§ 307 and 727(e).

## FACTS

5. On August 11, 2016, the Defendant, Tiffany Bestani filed a voluntary chapter 7 petition. Dkt. No. 1.

6. H. Jason Gold was appointed chapter 7 trustee. *See* Dkt. Nos. 3, 22.

7. On August 11, 2016, along with her voluntary petition the Defendant filed her Schedules and her Statement of Financial Affairs. Dkt. No. 1.

8. The Schedules included a "Schedule A/B: Property," which requires debtors to list their assets, including all of their real and personal property. *Id.* at 10-14.

9. The Defendant completed Schedule A/B, listing the total value of her property as $38,212. *Id.* at 14. Of these, the value of the Defendant's car accounted for the majority of her scheduled property.

10. Line 26 of the Defendant's Schedule A/B requires the Defendant to list Patents, copyrights, trademarks, trade secrets, and other intellectual property that she owns. *Id.* at 13. As examples, the Schedules provide "Internet domain names, websites, proceeds from royalties and licensing agreements." *Id.*

11. In response to Line 26, the Defendant checked the box for "No," indicating that she had no such property. *Id.*

12. Nowhere on Schedule A/B, nor anywhere else in her Schedules, does the Defendant disclose any ownership in any internet domains, websites, or her entitlement to any revenue generated from any internet sites. *See* Dkt. No. 1.

13. Line 30 of the Defendant's Schedule A/B requires the Defendant to list "Other amounts someone owes to you." *Id.* at 13.

14. In response to Line 30, the Defendant checked the box for "No," indicating that she had no such property. *Id.*

15. Nowhere in response to Line 30, nor anywhere else on her Schedules, does the Defendant disclose her entitlement to any portion of revenue generated from any websites or domain names.

16. Line 34 of the Defendant's Schedule A/B requires the Defendant to list "other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." *Id.* at 14. If the Defendant does have such property, the form requires the Defendant to "Describe *each* claim." *Id.* (emphasis added).

17. In response to this question, the Defendant checked the box for "Yes." In her description the Defendant stated that she has a "possible lawsuit that has not been pursued against former employer three years ago."

18. The Defendant valued this possible law suit as worth $1.00.

19. The Defendant listed no other claims in response to Line 34 and nowhere in her response to Line 34 or anywhere else on her Schedules does the Defendant disclose other possible claims that she may have, including an entitlement to revenue or proceeds from any websites or her entitlement to ownership of any websites.

20. Line 35 of the Defendant's Schedule A/B requires the Defendant to list "any financial assets you did not already list." *Id.* at 14.

21. In response to this question, the Defendant checked the box for "No," indicating that there were no financial assets that she had that the Defendant did not already disclose on her Schedule A/B.

22. With her Schedules, the Defendant filed a Declaration About an Individual Debtor's Schedules, which includes a statement "Under the penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." *Id.* at 31. The Defendant signed her name under this statement on August 11, 2016.

23. No amended Schedule A/B has been filed to list assets that were otherwise omitted.

**Three Days Before Her Meeting of Creditors, the Defendant Files Suit Seeking in Excess of $50,000 Dollars, Including Revenue Generated from the Website She Co-Founded**

24. A § 341(a) Meeting of Creditors ("341 Meeting") was scheduled for September 26, 2016 at 10:00 a.m.[1] Dkt. No. 9.

25. Three days prior to the meeting, on September 23, 2016, the Defendant filed a Complaint in the Superior Court of the State of California, County of Santa Clara against Eric Grossweiner and Bayshore Software Technologies, Inc., Case No. 16-CV-300261 ("the Complaint").[2]

26. The Complaint was filed by the Defendant, proceeding *pro se*, and listed as her contact information the same address that she provided as her address of record in her bankruptcy filing as well as her telephone number and email address.

---

[1] The § 341(a) Meeting was originally scheduled for October 3, 2016 at 10:00AM but at the request of the Defendant, the meeting was rescheduled to an earlier date. *See* Dkt. Nos. 3, 9-10.

[2] The Defendant later filed a First Amended Complaint on February 27, 2017 and signed a Verified First Amended Complaint on March 8, 2017.

27. With the Complaint was filed a Civil Cover Sheet.[3] On this Cover Sheet, in the box for "Jurisdiction," the Defendant checked the box indicating that the "Action is an Unlimited Civil Case (exceeds $25,000)."

28. Line 10 of the Cover Sheet requires the Plaintiff to describe the relief sought. On this line the Defendant checked two boxes: the first for damages, where she indicates that she is seeking damages in the amount of "$50,000+"; and the second box for "other," where she indicates that she is seeking a "percentage of gross revenues or proceeds of sale as specified in the breached contract and arrears."

29. On Line BC-1 of the Cover Sheet, the Defendant describes the essential terms of the agreement with two sentences: one describing her wage claim but including a second sentence for another claim, which states, "Plaintiff was to be paid a contractually agreed amount in perpetuity based on the gross revenues of Bayshore's site Collarme or receive half the proceeds in case of sale."

30. On Line BC-2, she describes two acts that constituted a breach of the agreement: the first a failure to pay certain wages and the second as the "failure to pay revenue sharing proceeds from April 2013 through the present."

31. On Line BC-4, the Defendant states that she has suffered damages "in an amount exceeding $25,000 based upon the revenues of Bayshore Software Technologies."

32. The Defendant also indicated that Bayshore Software Technologies, Inc. and Mr. Grossweiner had "made and withdrawn settlement offers" to her with respect to her claims.

33. The Complaint Cover Sheet bears the Defendant's signature and was signed on August 24, 2016, less than two weeks after her bankruptcy case was filed.

---

[3] This Cover Sheet included Form PLD-C-001 and PLD-C-001(1), which are approved for Optional Use by the Judicial Counsel of California for actions involving Contract and Breach of Contract claims.

34. The Complaint attached to the Cover Sheet was signed two days later on August 26.

35. The Complaint alleges that the Defendant developed a website business, Collarme.com, with Mr. Grossweiner and his company Bayshore Software Technologies, Inc. According to the Defendant, Collarme.com is "a free dating website for individuals active in the alternative lifestyle community."

36. The Defendant describes Collarme.com as a "joint project" which the Defendant "co-founded" beginning around 2002 and continuing through 2007.

37. At its peak, the website became "a viable business entity generating more than $40,000 per month" and "had over 1 million active user accounts and was growing in popularity."

38. The Defendant alleged that when she began work on the site, she worked "without regular compensation or grant of a formal equity interest in Bayshore or Collarme" but with "the explicit understanding that she would financially benefit from its eventual sale."

39. In June 2012, the Defendant alleged that she signed an agreement whereby she received a monthly consulting fee and also accrued "during the term of the contract a permanent entitlement to a share in Collarme's gross revenues and share of proceeds in the event Collarme were sold."

40. At the time the alleged agreement was terminated, the Defendant alleged that the website was generating operating profits in excess of $20,000 a month.

41. In her Prayer for Relief, the Defendant sought unpaid wages but she also sought the "revenue sharing payments to which she is entitled under the Agreement from April 2013 to the present."

42. In addition, the Defendant asked the Court to order the Defendants to pay "12% of its gross revenues in perpetuity" to her or, in the event damages could not be paid, have the Court order a supervised dissolution of Bayshore Technologies, Inc., "which under the terms of the Agreement would entitle Plaintiff to half of the proceeds received."

43. The Complaint was signed by the Defendant, *pro se*, on August 26, fifteen days after her bankruptcy filing and about one month prior to her meeting of creditors.

44. The Defendant never amended her previously filed schedules to disclose the damages she sought for revenue sharing or the dissolution of Bayshore Technologies, Inc. nor did she amend the complaint to value her lawsuit as worth more than $1 – even though she had just filed a complaint seeking over $50,000 in damages.

**The Defendant Misrepresents the Nature of Her Suit at Her Meeting of Creditors**

45. On September 26, 2016 the § 341 Meeting was conducted in this case, and the Defendant testified under penalty of perjury after being duly sworn by the trustee.

46. In response to questions by the trustee, the Defendant testified that she had signed the Petition, Schedules, Statements, and that she had read the papers before she signed them.

47. She further testified she was personally familiar with all of the information in her bankruptcy papers and that the information was true to the best of her knowledge.

48. When the trustee asked if there were any errors, omissions, or mistakes in the papers, she testified, "Not that I know of."

49. The trustee then asked the Defendant, "All of your assets are listed?" The Defendant responded, "Yes."

50. Near the conclusion of the § 341 Meeting the trustee asks "What was that lawsuit? Possible lawsuit I remember seeing?"

51. Counsel for the Defendant replied, "Former Employer." The Defendant then testified, "Yeah, it was a former employer. They didn't pay me the last three months and then when I contacted them, they said I was required to go through arbitration, but they didn't want to pay for arbitration. And then when I contacted someone - -".

52. The trustee then asked the Defendant why they didn't pay her, the Defendant testified, "They said they didn't have the money." He then asks, "How much was it, roughly"? The Defendant testified, "I think about 12,000."

53. At no time, at her § 341(a) Meeting did the Defendant disclose her ownership of Collarme.com or any other websites, that she had filed a lawsuit, that she was actively pursuing that lawsuit, that the Defendant was seeking a portion of revenues from the company in addition to her wage claims, or that the amount she was seeking was more than $50,000.

54. Based on the testimony of the Defendant the trustee filed a Chapter 7 Trustee's Report of No Distribution on September 30, 2016. Dkt. No. 12.

55. The Defendant received a discharge on December 7, 2016 and the case was closed five days later. Dkt. Nos. 13, 15.

**In the California Litigation the Defendant Admits Owning Collarme.com and that Domain Name was Transferred to Her at Least Two Years Prior to Her Bankruptcy Filing**

56. On September 15, 2017, Mr. Grossweiner and BayShore Software Technologies, Inc. filed an Ex Parte Application for a Temporary Restraining Order and Order to Show Cause in the lawsuit pending in Santa Clara Superior Court.

57. The Application sought to restrain the Defendant from accessing or modifying accounts related to 27 adult websites and domain names, including Collarme.com.

58. All of these websites were registered through the domain registration and hosting service, GoDaddy.com.

59. The Application alleged that in early September 2017, Mr. Grossweiner and BayShore Technologies, Inc., through counsel, gave notice to the chapter 7 trustee of the litigation and that the trustee was the true party in interest.

60. The chapter 7 trustee filed a Declaration in support of the Ex Parte Application, declaring that as trustee of the Defendant's Bankruptcy Estate, he is the party responsible for the assets of the estate and "the sole party in control of those assets." Dkt. No. 19-3 at 2.

61. The assets of the Bankruptcy Estate in this case included any personal property of the Defendant including her unliquidated causes of action and lawsuits, which include any claims that the Defendant has with respect to the 27 websites at issue with the Application for a Temporary Restraining Order. *Id.*

62. According to the Declaration filed by the chapter 7 trustee, "at no time did I give Plaintiff Bestani permission to prosecute the claims in this the above-titled action."

63. The trustee's Declaration further states that in his capacity as trustee of the Defendant's bankruptcy estate, he had reached an agreement with Mr. Grossweiner to transfer to him any of the Estate's claims in the litigation filed by the Defendant as well as the 27 Domain Names at issue in the Application for a Temporary Restraining Order.

64. On October 6, the Defendant filed an Opposition to the Application for a Temporary Restraining Order as well as Declaration in Support of Her Opposition.

65. The Opposition states that a Temporary Restraining Order was inappropriate in part because one of the domain names at issue, Collarme.com belonged to the Defendant.

66. In her October 5 Declaration, the Defendant stated that she is "the sole registrant and owner of the domain name 'collarme.com' and have been since approximately 2004." She attached to her declaration a copy of communications she had with GoDaddy, which in her view demonstrated that she "is the owner of the domain 'collarme.com.'"

67. The Defendant further declared that "In 2014, I contacted GoDaddy to request that the collarme.com domain name be transferred to my GoDaddy Account. I was entitled to the transfer of the domain name because I am the sole registrant and owner of the collarme.com domain."

68. The Defendant further explains that "GoDaddy conducted the transfer based on my proof of ownership of collarme.com."

69. However, nothing in the Defendant's Declaration explains why she failed to list her ownership interest in Collarme.com, or any other website the Defendant has an interest in, on her Bankruptcy Schedules or disclose her ownership interest at her § 341(a) Meeting of Creditors.

70. Similarly, nothing in the Defendant's Declaration explains why she failed to disclose the full nature of the litigation that she was pursuing, rather than merely characterizing the dispute as a "possible lawsuit that has not been pursued against former employer three years ago."

71. Nor does the Defendant's Declaration explain why she valued the lawsuit at $1 in her schedules. The Declaration also does not explain why the Defendant suggested at her Meeting of Creditors that the amount in controversy was $12,000, when she was actually pursuing a claim to seek a portion of the revenues generated from a website with tens of thousands of dollars in monthly revenues, which the Defendant knew provided her with a cause of action seeking damages of at least $50,000 or more.

**The Trustee Reopens the Bankruptcy Case to Administer the Undisclosed Assets**

72. On September 29, 2017 the chapter 7 trustee filed a Motion to Reopen the Case ("Motion to Reopen"). Dkt. No. 16.

73. In his Motion to Reopen, the trustee states that in September 2017 he became aware of assets that were not disclosed to the trustee. Specifically, the Defendant's interest in certain domain names and related accounts which related to a lawsuit pending in Santa Clara Superior Court. *Id.* at 1, ¶6.

74. After conducting a hearing on October 24, 2017, an Order Reopening the Case and Directing the Appointment of a Trustee was entered on October 31, 2017. Dkt. No. 21.

75. On November 1, 2017 the United States Trustee appointed H. Jason Gold as chapter 7 trustee in the reopened case. Dkt. No. 22

76. After being appointed trustee, Mr. Gold filed a Motion to Sell Domain Names under Section 363(b) ( the "Motion to Sell"). Dkt. No. 23.

77. The Motion to Sell asks that the Court to approve the sale by quitclaim deed of 27 domain names at issue in the California Litigation Mr. Grossweiner, the Defendant's former business partner, for $16,500.00. *Id.* The sale also includes certain releases regarding any claims that the Defendant has with respect to the 27 websites.

## COUNT I
## REVOCATION OF DISCHARGE UNDER 11 U.S.C. § 727(d)(1)
## DISCHARGE OBTAINED THROUGH FRAUD

78. The Plaintiff incorporates the allegations set for in paragraphs 1 through 77.

79. The Defendant obtained her chapter 7 discharge through fraud.

80. The United States Trustee did not know of the fraud until after the granting of the chapter 7 discharge.

**The Defendant Knowingly and Fraudulently Concealed Her Interest in Her Website and Her California Litigation Claims That Sought a Portion of That Site's Revenues**

81. In particular, the Defendant obtained her chapter 7 discharge through fraud as a result of her concealment of her website and her significant litigation claims from the chapter 7

trustee, which if known prior to the discharge being granted would have resulted in the denial of her discharge under 11 U.S.C. § 727(a)(2).

82. The Defendant's ownership interest in Collarme.com was an asset of the Defendant's bankruptcy estate after the date of the filing of the petition.

83. The Defendant's litigation claims against Bayshore Software Technologies, Inc. and Mr. Grossweiner were also property of the bankruptcy estate after the filing of the petition.

84. The chapter 7 trustee is an officer of the estate charged with custody of property under Title 11 and was entitled to liquidate these assets in order to distribute the proceeds to creditors of the bankruptcy estate.

85. In order to prevent those assets from being administered in her bankruptcy, the Defendant knowingly and fraudulently concealed her ownership of those assets.

86. The Defendant concealed her ownership interest in her website by not disclosing it on her bankruptcy schedules or in her testimony at her § 341(a) Meeting.

87. The Defendant concealed from the chapter 7 trustee her breach of contract claims against Mr. Grossweiner and Bayshore Software Technologies, Inc.

88. The Defendant engaged in concealment by acts designed to mislead the trustee, including only partially describing the nature of the claims at issue, purposefully disclosing only the claim that was the least lucrative on her Schedule A/B, failing to disclose her claim for a portion of the website revenue or 50% of the proceeds on dissolution, and by only describing in her Schedule A/B the dispute as a "possible lawsuit" that "had not been pursued" from "three years ago," when in fact the Defendant was actively pursuing the litigation.

89. The Defendant's concealment was done with the intent to hinder, delay, or defraud the chapter 7 trustee and the Defendant's creditors.

90. The Defendant's discharge should therefore be revoked.

**The Defendant Knowingly and Fraudulently Made False
Oaths on Her Schedules and at Her § 341(a) Meeting**

91.  The Defendant also obtained her chapter 7 discharge through fraud as a result of her knowing and fraudulent false oaths in connection with her personal bankruptcy case, which if know prior to the discharge being granted would have resulted in the denial of her discharge under 11 U.S.C. § 727(a)(4)(A).

92.  The Defendant knowingly and fraudulently in this bankruptcy case made false oaths by:

  a. Checking the box indicating, "No" on Line 26 of her Schedule A/B in response to the requirement to list internet domain names, websites, proceeds from royalties and licensing agreements or any other intellectual property. The Defendant knew that she owned the domain name Collarme.com – having been the sole registrant since approximately 2004 and having obtained the transfer of that domain name to her GoDaddy account in 2014 in response to proof of ownership that she had submitted. The Defendant also knew, based on the websites history of earning monthly revenues in excess of $20,000-$40,000 per month and generating over 1 million active users, that the website was potentially valuable;

  b. Checking the box indicating, "No" on Line 30 of her Schedule A/B in response to the requirement to list "Other Amounts Someone Owes to You." The Defendant knew that she had entered into an Agreement whereby a portion of the monthly revenues of her website were payable to her or that she may have had an entitlement to force the sale of Bayshore Software Technologies, Inc. and obtain half of the revenues from that sale. However, despite knowing that money was owed to her on that basis, the Defendant did not list her entitlement to those funds. The Defendant knew that this asset was valuable at the time she completed

her Schedules because she filed a lawsuit to recover those funds a few weeks later while her bankruptcy was pending;

c. Listing only "possible lawsuit that has not been pursue against former employer three years ago" in response to the requirement on Line 34 to list "other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." At the time she completed her Schedule A/B/, the Defendant knew her partial response was deceptive and failed to reveal the true nature of the litigation, which sought to recover tens of thousands of dollars in revenue due to the Defendant's ownership and development of a valuable website in addition to the wage claim she did describe. The Defendant's description that the lawsuit "has not been pursued" was also deceptive because at the time the Defendant completed her Schedule A/B she knew that she was going to file a suit to recover the wages and revenue sharing owed to her;

d. Valuing the lawsuit against Mr. Grossweiner and Bayshore Software Technologies, Inc. as worth only $1 when the Defendant knew in actuality that her cause of action was substantially more valuable. The Defendant knew that the claim was worth substantially more because just a few weeks later, she filed suit in California seeking substantial damages and estimating that she was entitled to receive amounts in excess of $50,000;

e. Checking the box indicating, "No" on Line 35 of her Schedule A/B in response to the requirement to list "any financial assets that you did not already list," when the Defendant knew she did not list valuable assets. At the time she completed her Schedules, the Defendant knew that she did not list anywhere on her Schedules either her ownership of Collarme.com, her entitlement to revenues from the

      website, or her entitlement to half of the proceeds of the company in the event it was dissolved;

    f. Stating at her § 341(a) Meeting of Creditors that she did not know of any errors, omissions or mistakes in her Schedules when the Defendant knew that she omitted listing her ownership interest in Collarme.com as well as the claims in her litigation that sought revenue sharing or half the value of Bayshore Software Technologies Inc. in a dissolution sale;

    g. Stating at her § 341(a) Meeting of Creditors that she listed all of her assets when the Defendant failed to list her ownership interest in Collarme.com or her claims against Bayshore Software Technologies, Inc. and Mr. Grossweiner, which sought a portion of the company's revenue or half its dissolution value; and

    h. Stating at her § 341(a) Meeting of Creditors that her suit was only for "about $12,000" when the Defendant knew that she had filed a complaint that was seeking damages in excess of $50,000.

93. Despite making these false statements in her Schedules and at her § 341(a) Meeting of Creditors, the Defendant signed her Schedules under penalty of perjury and testified under penalty of perjury at her § 341(a) Meeting.

94. The Defendant's knowing and fraudulent false oaths prevented the discovery of her ownership of Collarme.com or her significant litigation claims while her bankruptcy case was pending, which enabled her to obtain her discharge.

95. The Defendant's discharge should therefore be revoked.

### COUNT II
### REVOCATION OF DISCHARGE UNDER 11 U.S.C. § 727(d)(2)
### FRAUDULENT ACQUISION OF ESTATE PROPERTY

96. The Plaintiff incorporates the allegations set for in paragraphs 1 through 95.

97.    The Defendant acquired property that is property of the chapter 7 estate, as well as an entitlement to acquire estate property, and knowingly and fraudulently failed to report the acquisition of that property, or entitlement, or to deliver or surrender that property to the chapter 7 trustee.

98.    In particular, the Defendant's unpursued litigation claims against Bayshore Software Technologies, Inc. and Mr. Grossweiner were property of the bankruptcy estate at the time the bankruptcy petition was filed.

99.    By filing the California Litigation while her bankruptcy case was pending, pursuing those causes of action, and exercising control over that litigation, the Defendant acquired property that was property of her bankruptcy estate.

100.    The Defendant knew that the claims she was pursuing were bankruptcy estate property because she had listed one of her unpursued litigation claims on her bankruptcy schedules filed just a few weeks before.

101.    However, despite knowing that these claims were bankruptcy estate property, the Defendant knowingly and fraudulently failed to report the acquisition of or entitlement to such property or to deliver or surrender such property to the trustee.

102.    In fact, despite filing these litigation claims and knowing that the claims were property of her bankruptcy estate, the Defendant failed to report that she was pursuing these claims when asked about the litigation by the chapter 7 trustee at her § 341(a) Meeting. The Defendant also failed to disclose the true nature of the claims to the trustee at § 341(a) Meeting.

103.    The Defendant never delivered or surrendered such property to the trustee.

104.    The Defendant's discharge should therefore be revoked.

**WHEREFORE**, the United States Trustee respectfully requests that this Court revoke the Defendant's discharge and grant such further relief as is just and proper.

December 4, 2017                                JUDY A. ROBBINS
                                                U.S. TRUSTEE, REGION 4


                                                By:  */s/ Bradley D. Jones*
                                                     Bradley D. Jones (VSB No. 85095)
                                                     Trial Attorney
                                                     Office of United States Trustee
                                                     115 South Union Street, Suite 210
                                                     Alexandria, VA 22314
                                                     (703) 557-7228